CLERK'S OFFICE
A TRUE COPY
Jun 11, 2024
s/ E Borden
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with jordanhuff96@yahoo.com<br>that is stored at premises controlled by Apple | )<br>)<br>)<br>)<br>)<br>)    Case No.   24   MJ   121<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC §§ 371, 2312, 2313,<br>and 21 USC §§ 841(a) & 846 | Conspiracy, Transportation of Stolen Vehicles, Sale/Receipt of Stolen Vehicles,<br>Possessing with Intent to Distribute Drugs, Drug Conspiracy |

The application is based on these facts:

See Affidavit

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI SA Shane Hoffmann
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date:   06/11/2024                  _____
                                                *Judge's signature*

City and state:   Milwaukee, Wisconsin         William E. Duffin, U.S. Magistrate Judge
                                                          *Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH WARRANT

I, Shane Hoffmann, being first duly sworn, hereby depose and state as follows:

1.      I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since September 2015. I am currently assigned to the Milwaukee Division – Madison Resident Agency. Since becoming a Special Agent, I have received specialized training in conducting criminal investigations, and my responsibilities include conducting investigations of alleged criminal violations of federal statutes and laws. I have participated in the execution of search warrants in various judicial districts,

including the recovery of records, contraband, and other types of property. I have received training in computer technology, and I have on numerous occasions reviewed the content of targets' phones and computers, email accounts, and social media accounts for evidence of criminal activity.

3.      This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROPERTY TO BE SEARCHED

4.      The Apple iCloud account to be searched is: **jordanhuff96@yahoo.com**

## PROBABLE CAUSE

### Background

5.      The United States, including Federal Bureau of Investigation, together with other federal, state, and local law enforcement partners, is conducting a criminal investigation of DIAUNTE D. SHIELDS (DOB: 02/18/1995), JORDAN A. HUFF (DOB: 09/09/1996), and others known and unknown, regarding possible violations of, among other crimes, 18 U.S.C. § 371 (conspiracy), 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), 21 U.S.C. § 841(a) (possessing a controlled substance with intent to distribute) and 21 U.S.C. § 846 (drug conspiracy).

6. More specifically, the investigation has revealed a nationwide criminal enterprise involved in a variety of illicit activities. The hubs of their conduct include the areas in and around Milwaukee, Wisconsin, Chicago, Illinois, and Atlanta, Georgia. In addition to possessing and transporting a significant quantity of drugs, described more fully below, the enterprise also engages in the theft and resale of high-end automobiles including Dodge Ram TRXs, Dodge Challenger Hellcats, Cadillac Escalades, Chevrolet Corvettes, Jeep Trackhawks, Jeep SRTs, GMC Yukons, Chevy Suburbans, and others. The enterprise acquires the vehicles from a variety of sources, including stealing them from private properties, public parking lots including airports, rental car facilities, dealerships, and assembly plants. The vehicles are often stolen utilizing key reprogramming technology. Investigators have also learned that targets utilize GPS tracking technology to track vehicles targeted for theft. To date, investigators have linked hundreds of stolen vehicles to the group with a value exceeding $10 million dollars. Although the vehicles are often resold well below market value, the actors profit significantly from the resale of vehicles.

7. Upon acquiring a stolen vehicle, the enterprise "cleans" the vehicle by equipping it with a new (false) Vehicle Identification Number (VIN). They change the public VIN plate on the dashboard and the stickers on the driver side door to denote the new false VIN. The false VINs are often completely fabricated; the vehicles' manufacturers have confirmed numerous times that the VINs used by the enterprise,

3

discovered or identified in the investigation, never existed on a legitimate vehicle.

8. The investigation has determined that SHIELDS has been participating in this activity since at least 2019 with major hubs of activity including Milwaukee, Wisconsin, Chicago, Illinois, and Atlanta, Georgia. He and his associates distribute the "cleaned" stolen vehicles from coast to coast through the use of "runners" and commercial haulers.

### Relationship Between SHIELDS and HUFF

9. A review of messages received from a search warrant return for devon5578@icloud.com, an iCloud account that has been linked to SHIELDS, showed an extensive conversation history between SHIELDS and a contact under the name "Jordan" using phone number 773-690-8469. The conversation spanned the timeframe of approximately July 1, 2019, through April 18, 2022. T-Mobile records indicate that 773-690-8469 was subscribed to JORDAN A HUFF, date of birth September 9, 1996, at address 5525 S. Princeton Avenue, Chicago, Illinois. The account was activated on January 12, 2019, and terminated on June 23, 2022.

10. Apple confirmed that the iCloud account **jordanhuff96@yahoo.com** was subscribed in the name of JORDAN HUFF and was created on March 24, 2013. One of the associated phone numbers is 773-690-8469.

11. The conversations between HUFF and SHIELDS are indicative of HUFF "working" for SHIELDS. On numerous occasions SHIELDS asked HUFF (via text

4

message) to travel out of town for him. They also frequently discussed payment for HUFF'S services. Based on my knowledge of the case, and my training and experience, it is my belief that HUFF contributed to SHIELDS's criminal enterprise by driving stolen vehicles and/or drugs to and from different locations throughout the country. Often, SHIELDS would instruct HUFF to fly to a location (e.g., Atlanta) and then drive back, or HUFF would drive to a location and fly back to Chicago. The following excerpts from their conversations exemplify their working relationship.

     a. On or about July 3, 2019, HUFF texted SHIELDS, "LMK if you got time to teach me the hustle cuzzo." Based on my training and experience, I know "hustle" usually refers to some method to make money, usually illegally. In this case I believe HUFF wanted SHIELDS to teach him about the criminal activities SHIELDS was involved in, such as stealing and reselling vehicles and distributing drugs.

     b. On or about July 6, 2019, SHIELDS asked HUFF, "If you want to make a couple dollars lmk." I believe SHIELDS was offering HUFF a job for which HUFF would get paid. Later, SHIELDS told HUFF that his flight leaves at 12. After HUFF indicated that he landed, SHIELDS sent him the address, "3097 Presidential Dr., Atlanta, Georgia." An open source search showed that WILLIE BULLARD, a known associate of SHIELDS, was associated with 3097 Presidential Drive, Atlanta, Georgia, as was TASHERA

5

NEWSOME, SHIELDS's grandmother. The conversation indicated that HUFF likely picked up a vehicle in Atlanta and drove it to Texas, as he asked SHIELDS where the gas tank button is and then tells him he is stopping at a motel because he is tired. Later, SHIELDS told HUFF to go to the closest airport which was Dallas/Fort Worth International. HUFF indicated that he got on the plane and asked SHIELDS to send him SHIELDS's address. SHIELDS's response was, "8920 83rd st apt 32 pleasant Prairie wi 53158." After making the trip from Atlanta to Texas, I believe HUFF flew back.

c. On or about July 15, 2019, HUFF asked SHIELDS if SHIELDS could "send me some bread and you just take off whatever from the next move we make…" I know from my training and experience that "bread" refers to money, and "move" refers to conducting some type of criminal activity. I believe HUFF was asking SHIELDS to be paid in advance, and the payment received by HUFF could then be deducted from the money that SHIELDS would owe HUFF in the future for their next activity.

d. On or about January 8, 2020, SHIELDS asked HUFF, "You want to drive?" SHIELDS told HUFF that HUFF needs to leave "tonight," to which HUFF said he will leave around 11. SHIELDS then sent HUFF the address, "2777 Bell SE Smyrna, GA 30080," which is another address associated with

6

WILLIE BULLARD, per open source records. HUFF also asked SHIELDS to send him "40" for gas and told SHIELDS, "I made it cuz. Can you send the rest for me." SHIELDS then told HUFF he will give him "100" for picking some money up at Walmart. Based on my training and experience I believe this conversation indicates that SHIELDS had HUFF drive a vehicle to Atlanta, Georgia. Upon getting to Georgia, HUFF asked SHIELDS for payment. SHIELDS also asked HUFF to pick money up at Walmart for an additional payment of $100. Based on my training and experience, I know that those involved in illegal activities often wire money for payments and products through wire services such as Walmart to Walmart.

e. On or about April 6, 2020, SHIELDS and HUFF discussed what time HUFF was going to be on the road. Huff said he is going to leave around 8 am to which SHIELDS responded, "Dude you need to hit the road at night. I keep telling you that's why the police fucking with you." Based on my training and experience, I believe SHIELDS was trying to minimize HUFF's chances of encountering law enforcement because HUFF was engaging in illegal activities on behalf of SHIELDS.

f. On or about June 4, 2020, HUFF asked SHIELDS, "What the name of the business I drive for? What number do I give and how much should I say I make a month? And could we make a paystub for it?" In a series of

7

responses, SHIELDS told HUFF the business is DAW Logistics LLC and that HUFF can provide SHIELDS's phone number. I know that DAW Logistics is a business that was created by SHIELDS and BULLARD and incorporated in Georgia in 2019. Based on my training and experience I know that individuals engaged in criminal activity often try to mask their activity through creating businesses and LLCs. It is apparent through this exchange that HUFF is not aware of the business he allegedly works for and is likely trying to use the information to apply for something, possibly a financial line of credit, as HUFF discusses needing a co-signor.

g. On or about April 23, 2021, SHIELDS asked HUFF to "make a run" to Detroit and back. SHIELDS told HUFF that HUFF should be back in eight hours and that SHIELDS would pay HUFF as if HUFF is driving "to the A." SHIELDS told HUFF that SHIELDS would send him money via Cashapp "to buy what I need from the store." HUFF asks what car he would be driving and SHIELDS responded, "Your car lol." Based on my training and experience, I believe SHIELDS was asking HUFF to drive to Detroit for him and SHIELDS would pay HUFF as if HUFF was driving all the way to Atlanta. I believe that HUFF was picking up drugs for SHIELDS because HUFF was driving his own car; if HUFF was transporting a stolen vehicle for SHIELDS, HUFF would be unable to drive his own car.

8

h. On or about April 24, 2021, SHIELDS asked CASHA GRIFFIN, SHIELDS's girlfriend and known associate, to send "Jordan" $550. From January 2021 through September 2021, CashApp records for cashtag "majorsmom93," which has been linked to GRIFFIN, showed that GRIFFIN sent $2,658 to "Jordan Huff."

### JORDAN HUFF'S Traffic Stop in Indiana

12. On or about April 17, 2022, SHIELDS and HUFF had the following text conversation, per records obtained from devon5578@icloud.com:

> HUFF: You still need me?
> SHIELDS: If you can
> HUFF: You need me to drive down there?
> SHIELDS: Drive up
> SHIELDS: Alaska air 4E6UQB From midway Flight is at 645 be there at 5

13. The conversation continued on or about April 18, 2022:

> HUFF: Where I'm taking this car to?
> SHIELDS: My crib
> SHIELDS: If I'm texting you cuz text me
> HUFF: Can I bring it after work tomorrow
> SHIELDS: Nah I got shit in there
> HUFF: Ite I'm catching a Uber back to the city?

14. On April 18, 2022, Whitestown, Indiana, Police Department Officer Lushin conducted a traffic stop on a Dodge Challenger bearing Tennessee license plate BGQ6490 for speeding in a construction zone. The driver and sole occupant of the vehicle was identified as JORDAN HUFF who stated that the vehicle was his "cousin's." HUFF stated

9

he traveled to Atlanta, Georgia, to see his cousin, stayed one day, and then was given the vehicle to drive to Chicago, Illinois.

15. Officer Lushin conducted a probable cause search of the vehicle based on the smell of marijuana coming from the car. During the search, a vacuum sealed package was observed via a slit in the steering column, and another vacuum sealed package was observed in the passenger side vent closest to the radio. HUFF declined consent to a further search of the vehicle.

16. On April 19, 2022, a state search warrant, signed by Judge Kincaid, was authorized to search the Dodge Challenger bearing Tennessee license plate BGQ6490. A search recovered ten vacuum sealed plastic bags containing a white crystal substance concealed behind the glove compartment, behind the radio, and in the dashboard area. The total weight of the packages was 10.76 pounds. A field test was conducted and tested positive for the presence of methamphetamine. In a certificate of analysis dated July 21, 2022, Indiana State Police Laboratory testing confirmed the presence of methamphetamine.

17. Hertz Rental Car records showed that on April 17, 2022, at approximately 11:44 am, a vehicle with Tennessee license plate BGQ6490 was rented by DIAUNTE SHIELDS, date of birth of February 18, 1995, home phone number 773-946-3995, and email address sdiaunte@gmail.com. The vehicle was rented from the Atlanta airport with a listed return date of 10:00 am on April 18, 2022.

10

18.     A review of jail calls that HUFF placed from Boone County Jail to his girlfriend, Ashley Anderson, after his arrest indicated that HUFF wanted Ashley to contact "his cousin" and have him get HUFF out of jail because HUFF was not taking "this shit."  In a call from April 19, 2022, at approximately 4:21 am EST, HUFF told his girlfriend "motherfucker ain't even tell me that's what was going on." In later jail calls Ashley used the name "DIAUNTE."  During at least three jail calls, HUFF's girlfriend called a person believed to be SHIELDS during calls with HUFF to discuss getting HUFF out of jail.

19.     On May 16, 2023, the Honorable William E. Duffin, United States Magistrate Judge of the Eastern District of Wisconsin, issued a search warrant in Case No. 23-MJ-94 for historical location information for the call number 773-946-3995, which had been associated with SHIELDS.

20.     Mapping of the historical location information for call number 773-946-3995 indicated that on April 17, 2022, SHIELDS's phone was in the area of the Atlanta airport during the timeframe when the vehicle that HUFF was later pulled over driving was rented. Cellular location records showed that during the evening of April 17, 2022, SHIELDS's phone traveled back to Wisconsin.  On April 18, 2023, SHIELDS's phone left the area of Somers, Wisconsin, traveled to LaCrosse, Wisconsin, and was enroute to St. Louis, Missouri, during the time of HUFF's traffic stop. On April 19, 2022, at approximately 3:47 am CST, SHIELDS's phone made an outgoing call to phone number

11

765-335-6699 which open source records indicated was a bail bond service in Indiana. On April 19, 2023, SHIELDS's phone left St. Louis and returned to the area of his residence in Somers, Wisconsin. Between approximately April 1, 2022, through April 26, 2022, the top tower used by SHIELDS's phone was the one in Somers in the area of SHIELDS's known address of 1050 58th Court, Somers, Wisconsin.

21. Based on my training and experience, and the available records, I believe SHIELDS flew HUFF to Atlanta, Georgia, so HUFF could transport drugs back for SHIELDS. The records and text messages show that SHIELDS arranged both the flight and the rental of the car that HUFF was stopped in. When HUFF asked SHIELDS if HUFF could deliver the car to him the next day, SHIELDS declined because SHIELDS had "shit in there." I believe "shit" was in reference to the approximately ten pounds of methamphetamine that was recovered by law enforcement. SHIELDS stated that he wanted HUFF to bring the car to SHIELDS's "crib." The investigation has shown SHIELDS was residing in Wisconsin at this time, as approximately one week after the car stop, four search warrants were executed around Kenosha, Wisconsin, on properties and a storage unit associated with SHIELDS. Additionally, historical cellular location information linked SHIELDS to Somers, Wisconsin.

22. Based on the information above, I believe JORDAN HUFF was "employed" by SHIELDS dating back to 2019 and often acted as a courier for SHIELDS in moving vehicles and/or drugs throughout the country.

23.     Pursuant a warrant issued on January 17, 2024 by the Hon. William Duffin, investigators received historical location information associated with HUFF's known cell phone number, 773-690-8469. That location information is consistent with HUFF's movements, described above, during the trip HUFF made to Atlanta on April 18, 2022, in which HUFF acquired a vehicle that was ultimately stopped with approximately ten pounds of methamphetamine.

24.     With this warrant, investigators seek information from the iCloud account **(jordanhuff96@yahoo.com)** associated with HUFF's known phone number (773-690-8469) from July 3, 2019 through the present. This timeframe is based on the beginning of the established working relationship between HUFF and SHIELDS, through and past the time of the Indiana traffic stop to account for any communications related to the consequences of the stop. Investigators hope to recover from the iCloud account text messages, phone logs, and other records that would further illuminate the nature of the April 2022 drug run to Atlanta, as well as the other criminal activity and co-conspirators involved in HUFF's working relationship with SHIELDS.

25.     On approximately April 18, 2024, Apple was served with a preservation request for records pertaining to **jordanhuff96@yahoo.com**.  Apple acknowledged receipt of the preservation request and provided reference number 202400611504. Apple has indicated that the user's messages are backed up to the iCloud account.

13

26.     Based on the above, I have reason to believe that HUFF used his cell phone, connected to an associated iCloud account, to facilitate his crimes, and has kept and maintained evidence of those crimes on the target iCloud account.

## BACKGROUND CONCERNING APPLE[1]

27.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

28.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

    a.     Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

    b.     iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant

---

[1]     The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

14

messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c. iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

15

e. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

f. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or MacOS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

29. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email

16

addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

30. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

31. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for

17

iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

32. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

33. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My

18

Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

34. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

35. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are

often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Further, I know from the investigation to date that SHIELDS has used iCloud accounts in the past to facilitate his criminal conduct and keep and maintain records of such criminal conduct, including photographs, videos, screenshots of web inquiries, and screenshots of contact information.

36. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

37. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information

20

on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

38.     Other information connected to an Apple ID may lead to the discovery of additional evidence.  For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators.  In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

39.     Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

40.     Based on the forgoing, I request that the Court issue the proposed search warrant.

41.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute

21

this warrant by serving the warrant on Apple. Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Case 2:24-mj-00121-WED    Filed 06/11/24    Page 23 of 33    Document 1

# ATTACHMENT A

## Property to Be Searched

## Matter No. 2022R00208

This warrant applies to information associated with **jordanhuff96@yahoo.com** that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

**ATTACHMENT B**

**Particular Things to be Seized**

**Matter No. 2022R00208**

**I.    Information to be Disclosed by Apple Inc. ("Apple" or the "Service Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) under reference number 202400611504, Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A, for the time period of July 3, 2019, through the present:

a.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.    All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.    The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and

deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.     The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.     The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.     All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and capability query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My and AirTag logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.     All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with AirTags, Location Services, Find My, and Apple Maps;

j.     All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

**The Service Provider is hereby ordered to disclose the above information to the government within FOURTEEN (14) DAYS of issuance of this warrant.**

## II.	Information to be Seized by the Government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), 21 U.S.C. § 841(a) (distribution of and possession with intent to distribute controlled substances), and 21 U.S.C. § 846 (drug conspiracy), involving DIAUNTE SHIELDS, JORDAN HUFF, and/or any other known or unknown co-conspirators, for the period of July 3, 2019, through the present, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Location information associated with the co-conspirators, call and message records associated with the co-conspirators, and records related to drug trafficking, stolen vehicles, VINs and titles, the transportation of vehicles, and money transfers;

(b) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

(c) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

(d) The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the account user about matters relating to the crimes described herein.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

☐ Original

CLERK'S OFFICE
A TRUE COPY
Jun 11, 2024
s/ E Borden
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with<br>jordanhuff96@yahoo.com that is stored at<br>premises controlled by Apple | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 24 MJ 121

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 06/25/2024 *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. William E. Duffin _____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 06/11/2024 at 11:25 a.m. _____
*Judge's signature*

City and state: Milwaukee, Wisconsin _____ William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of : |
|---|

| Inventory of the property taken and name(s) of any person(s) seized: |
|---|

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

## Matter No. 2022R00208

This warrant applies to information associated with **jordanhuff96@yahoo.com** that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

**ATTACHMENT B**

**Particular Things to be Seized**

**Matter No. 2022R00208**

**I.      Information to be Disclosed by Apple Inc. ("Apple" or the "Service Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) under reference number 202400611504, Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A, for the time period of July 3, 2019, through the present:

a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.      All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.      The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and

deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d. The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e. The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f. All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and capability query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My and AirTag logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g. All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with AirTags, Location Services, Find My, and Apple Maps;

j. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

**The Service Provider is hereby ordered to disclose the above information to the government within FOURTEEN (14) DAYS of issuance of this warrant.**

## II.  Information to be Seized by the Government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), 21 U.S.C. § 841(a) (distribution of and possession with intent to distribute controlled substances), and 21 U.S.C. § 846 (drug conspiracy), involving DIAUNTE SHIELDS, JORDAN HUFF, and/or any other known or unknown co-conspirators, for the period of July 3, 2019, through the present, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Location information associated with the co-conspirators, call and message records associated with the co-conspirators, and records related to drug trafficking, stolen vehicles, VINs and titles, the transportation of vehicles, and money transfers;

(b) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

(c) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

(d) The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the account user about matters relating to the crimes described herein.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.